UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

16th Street Regency LLC,

                Debtor.

----------------------------------------------------------------x
Isaac Mutzen as a member of
16th Street Regency LLC, 16th Street Regency LLC,
Isaac Mutzen as a member of
198-210 6th St. LLC, and 198-210 6th St. LLC,

                Plaintiffs,

      v.

Marans Weisz & Newman LLC
f/k/a Marans & Weiss LLC, and
Howard Hershkovich,

                Defendants.
----------------------------------------------------------------x

Chapter 11

Case No. 14-46104-nhl

Adv. Pro. No. 15-01035-nhl

# DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

<u>APPEARANCES</u>:

Ira R. Abel, Esq.
Law Offices of Ira R. Abel
305 Broadway, 14th Floor
New York, NY 10007
*Attorney for Plaintiffs\**

Robert M. Sasloff, Esq.
Roger Raymond, Esq.
Robinson Brog Leinwand Greene
Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, NY 10022
*Attorneys for Howard Hershkovich*

HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion (the "Motion") of defendant Howard Hershkovich ("Hershkovich" or "Defendant") for summary judgment with respect to the sole claim asserted against him by plaintiffs (i) Isaac Mutzen ("Mutzen"), as a member of 16th Street Regency LLC; (ii) 16th Street Regency LLC (the "Debtor"); (iii) Isaac Mutzen, as a member of 198-210 16th St. LLC;[1] and (iv) 198-210 16th St. LLC ("16th Street," collectively, the "Plaintiffs"). The claim, for unjust enrichment, arises out of the transfer to Hershkovich and others of ten condominium units of real property located at 198-210 16th Street, Brooklyn, New York 11215, purportedly made in satisfaction of an outstanding debt. For the reasons set forth below, the Defendant's Motion for summary judgment is denied.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

*Procedural History*

On December 3, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pre-petition, on April 11, 2014,

---

*Plaintiffs were previously represented by David Carlebach, The Carlebach Law Group, 55 Broadway, Suite 1902, New York, NY 10006, a suspended attorney. *See* General Order No. 663 dated January 5, 2018.
[1] Plaintiffs improperly captioned "198-210 16th St. LLC" as "198-210 6th St. LLC."

1

Plaintiffs filed a complaint (the "Complaint") against defendants Marans Weisz & Newman, LLC ("Marans") and Howard Hershkovich, in an action styled *ISAAC MUTZEN, as a member of 16th STREET REGENCY LLC, 16TH STREET REGENCY LLC, ISAAC MUTZEN as a member of 198-210 6th ST. LLC and 198-210 6th ST. LLC v. MARANS WEISZ & NEWMAN, LLC f/k/a MARANS & WEISS LLC and HOWARD HERSHKOVICH*, in the Supreme Court of New York, County of Kings, Index No. 503167/2014 (the "State Court Action"). Compl., ECF No. 2-1. Plaintiffs removed the State Court Action to this Court by Amended Notice of Removal dated March 10, 2015. Am. Notice of Rem., ECF No. 2.

The Complaint initially alleged four causes of action. The first three, for professional malpractice, records turn-over, and breach of contract, were against Marans, a firm retained by Plaintiffs to represent them in various real estate transactions. Compl. ¶¶ 9, 22–36, ECF No. 2-1. Plaintiffs averred that Marans failed to advise them that a loan agreement entered into with defendant Hershkovich was "usurious as a matter of law and thus voidable and/or void," and that they were injured when ten condominium units valued in excess of $7,000,000 were transferred to Hershkovich and others to satisfy that loan. *Id.* ¶¶ 10–12.

The Court dismissed the three claims against Marans at a hearing on October 21, 2015. *See* Order dated Nov. 13, 2015, ECF No. 32. Notably, in dismissing the professional malpractice claim, the Court found that Marans could not have committed malpractice by failing to advise Plaintiffs that the loan agreement with Hershkovich was usurious because, pursuant to New York General Obligations Law §§ 5-521 and 5-501(6)(b), the agreement was not usurious as a matter of law.

The fourth and only remaining cause of action alleged that Hershkovich was unjustly enriched by his improper receipt of the ten condominium units. *See* Compl. ¶¶ 37–40. By the

instant Motion, Hershkovich seeks summary judgment as to that claim. Def.'s Mot. Summ. J., ECF Nos. 56-59. Plaintiffs filed Opposition to the Motion, Pls.' Opp'n, ECF Nos. 60–62, to which Hershkovich filed a Reply, Def.'s Reply, ECF No. 63. Each party filed their respective statements pursuant to E.D.N.Y. Local Bankruptcy Rule 7056-1. *See* Def.'s LBR 7056-1 Stmt., ECF No. 59; Pls.' LBR 7056-1 Stmt., ECF No. 61. Hershkovich filed a supplemental declaration and memorandum of law in support of the Motion, Def.'s Suppl. Decl., ECF Nos. 69–70; Mutzen filed a supplemental declaration in opposition to the Motion, Mutzen Suppl. Decl., ECF No. 77. The Court held several hearings on the Motion and the responses thereto. Thereafter, the matter was taken under advisement.

*Factual Background*

    I.     The 2005 Agreement

On September 1, 2005, Plaintiff 16th Street, by its members, Isaac Mutzen, Benjamin Mutzen, and Nathan Hirsch (collectively, the "Members"), and its manager Yosef Gruber (the "Manager"), entered into a certain Trust, Pledge and Loan Agreement (the "2005 Agreement") with Hershkovich,[2] and with Marans acting as trustee (the "Trustee"). 2005 Agmt., ECF Nos. 56-2, 69-1. The 2005 Agreement was executed by Hershkovich, Yosef Gruber on behalf of 16th Street, and Isaac Mutzen, Benjamin Mutzen, and Nathan Hirsch as Members.[3] *Id.* at 6. The Members also executed the 2005 Agreement as guarantors. *Id.*

At the time of the 2005 Agreement, 16th Street was the 100% owner of the real property located at 198-210 16th Street, Brooklyn, New York 11215, identified as Block 1053, Lot 28 (the "Property"), and encumbered by a sole mortgage in the amount of $9,358,000 given by 16th Street

---

[2] The 2005 Agreement refers to Hershkovich as the "Investor." *See* 2005 Agmt. 1, ECF Nos. 56-2, 69-1.
[3] The copies of the 2005 Agreement produced contain a signature line for Richard Marans as the Trustee, but it was left unsigned. *See* 2005 Agmt. 6, ECF Nos. 56-2, 69-1.

to China Trust Bank. *Id.* The 2005 Agreement provided that the Property was being developed into approximately 32 residential condominium units (collectively, the "Units"), which were to be sold pursuant to a condominium conversion plan. *Id.*

Pursuant to the terms of the 2005 Agreement, Howard Hershkovich loaned $2,300,000 (the "Hershkovich Loan") to the Members, which, together with an origination fee in the amount of $1,575,000, was to be repaid within 12 months from the date said loan was made. *Id.* The 2005 Agreement further provided that, if the Hershkovich Loan and fee were not paid back within 12 months, they would accrue interest at the rate of 1.80% per month for the following three months that it remained unpaid (months 13 to 15), and that interest would accrue at 1.25% for the subsequent nine months thereafter (months 16 to 24) (the Hershkovich Loan, fee amount, and interest, hereinafter the "Loan Amount"). *Id.* Further, the 2005 Agreement provided that, if the Loan Amount was not paid back within 24 months, a $27,000 monthly fee would be assessed for each subsequent month until repayment. *Id.* ¶ 2.

The terms of the 2005 Agreement envisioned that, as 16th Street sold the Units, the net sales proceeds (the "Sales Proceeds")[4] would be paid, as directed by the Members, to the Trustee. 2005 Agmt., ECF Nos. 56-2, 69-1. As collateral for the subject loan, the 2005 Agreement specifically provided that the Members would "irrevocably direct [16th Street] to pay Sales Proceeds to the Trustee," and further would "pledge and assign to" Hershkovich their rights to direct the Trustee as to how it should disburse the Sales Proceeds it received. *Id.* at 1–2, ¶¶ 3–4. The 2005 Agreement further provided that if the Loan Amount was not paid by the Final Payment Date (24 months from the date the loan was made), as additional collateral for the Loan Amount,

---

[4] "Sales Proceeds" is defined in the 2005 Agreement as being the net proceeds from the sales of the Units "after paying: (i) actual and customary expenses incurred in connection with such sales; (II) the Bank Loan." 2005 Agmt. 1, ECF Nos. 56-2, 69-1.

4

each of the Members would personally guarantee payment of the same. *Id.* ¶ 2. The Hershkovich Loan was not secured by a mortgage on the Property, nor was there any provision in the agreement that directed the transfer of the Units to Hershkovich or other individuals in the event of default.

The Hershkovich Loan was not the only loan contemplated by the 2005 Agreement. Its terms state that it constituted only "57.5% of a total loan amount" of $4,000,000.[5] 2005 Agmt. ¶ 24, ECF Nos. 56-2, 69-1. A separate agreement executed by Leon Goldstein, also dated September 1, 2005, and containing terms substantially similar to the 2005 Agreement, reflects a loan by him of $1,500,000, with an origination fee of $375,000. *See* Goldstein Loan Agmt., ECF No 69-2. According to that agreement, the sum loaned by Goldstein made up an additional 37.5% of the total amount.[6] *Id.* ¶ 24.

At some point, the 2005 Agreement matured, and 16th Street defaulted on its obligations by failing to repay the amounts due thereunder. *See, e.g.*, Def.'s LBR 7056-1 Stmt. ¶ 10, ECF No. 59; Mutzen Aff. Opp'n ¶ 7, ECF No. 60.

II.   The 2008 Transfers

On June 25, 2008, ten of the condominium Units in the Property (the "Transferred Units") were transferred to Hershkovich and others,[7] which Hershkovich alleges was done to satisfy the

---

[5] Paragraph 24 of the 2005 Agreement also provides, in pertinent part, that:

> The Investor agrees that any distributions by the Trustee will be paid out on a parri passu [sic] basis between the Investor and the Other Investors based on each Investor's percentage of the total loan amount . . . which amount is $4,000,000. In no event will the Investor be paid more than the Loan Amount.

2005 Agmt. ¶ 24, ECF Nos. 56-2, 69-1.

[6] Hershkovich asserts that, in addition to his loan and the loan from Goldstein, an individual named Brian Cooper loaned $200,000, bringing the total loan amount to $4,000,000. Def.'s Suppl. Decl. ¶ 8, ECF No. 69. However, Defendant did not submit a loan agreement for Cooper.

[7] The Real Property Transfer Reports identify the Debtor (16th Street Regency LLC) as the seller, whereas the 2005 Agreement identifies 16th Street as the owner of the Property. *See* Real Prop. Transfer Rep., ECF No. 56-3. The Transferred Units are: Units 2C, 3A, 3C, 3G, 3H, 4B, 4C, 4F, 4G, and 4I of the Property. *See id.*

outstanding indebtedness (the "2008 Transfers"). Def.'s LBR 7056-1 Stmt. ¶ 11, ECF No. 59; Mutzen Aff. Opp'n ¶ 7, ECF No. 60.

Hershkovich submits that, at the time of the 2008 Transfers, the total amount owed to him under the 2005 Agreement totaled $4,749,912.50, and the amount owed to Leon Goldstein under the terms of the related agreement was $2,239,750.50, for a combined total of $6,989,633.[8] Def.'s Suppl. Decl. ¶¶ 5–6, 8, ECF No. 69. Plaintiffs also acknowledge the total amount owed at the time of the 2008 Transfers as being approximately $7,000,000. Mutzen Aff. Opp'n ¶ 7, ECF No. 60; Pls.' LBR 7056-1 Stmt. ¶ 5, ECF No. 61.

In support of his assertion that the 2008 Transfers were made "to satisfy the debt memorialized in the 2005 Agreement," Hershkovich submitted copies of the Real Property Transfer Reports, Form RP-5217NYC, each dated June 25, 2008 (the "Transfer Reports"), evidencing the transfer of the Transferred Units to Hershkovich and certain other individuals and entities. Def.'s Decl. ¶ 9, ECF No. 56-1; Real Prop. Transfer Rep., ECF No. 56-3; Def.'s Suppl. Decl. ¶ 9, ECF No. 69. The Transfer Reports list the "full sale price" of each of the Transferred Units, and reflect a collective sum of $6,936,000. Real Prop. Transfer Rep., ECF No. 56-3; Def.'s Suppl. Decl. ¶ 10, ECF No. 69.

Notably, there was no other written agreement entered into by the parties that contemplated or memorialized the 2008 Transfers of the Transferred Units, or described what effect such transfers would have in relation to the indebtedness created by the 2005 Agreement. *See, e.g.*, Pls.' Mem. Law, ECF No. 62; Dec. 20 Hr'g Tr. 52:19–21, 55:1–7, ECF No. 80.

---

[8] This does not include the sums due and owing to Brian Cooper. Def.'s Suppl. Decl. ¶ 8, ECF No. 69.

**LEGAL STANDARD**

*Motion for Summary Judgment*

Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, the court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, No. 9:06-CV-401 (FJS/DEP), 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd in part*, 375 F. App'x 73 (2d Cir. 2010). While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel,* 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these

7

facts, *see Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case such that a reasonable trier of fact could find in that party's favor. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at 586–87. That being the case, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

*Unjust Enrichment*

To prevail on a claim for unjust enrichment under New York law, the plaintiff must demonstrate that: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *In re Chin*, 492 B.R. 117, 125 (Bankr. E.D.N.Y. 2013) (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)); *see also Golden Pac. Bancorp. v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001); *In re Moyer Grp., Inc.*, 586 B.R. 401, 408 (Bankr. S.D.N.Y. 2018). In short, the plaintiff must establish that the defendant was enriched, and such enrichment was unjust. *Chin*, 492 B.R. at 125 (citing *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984)).

"[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Moyer Grp.*, 586 B.R. at 408 (quoting *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012)). "Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched . . . . What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." *Id.* (quoting *Simonds v. Simonds*, 45 N.Y.2d 233 (1978)).

8

**DISCUSSION**

In essence, Plaintiffs allege that the 2005 Agreement was a usurious loan as a matter of law; should in turn be declared void; and that any transfer of value allegedly made to satisfy the indebtedness under that void agreement, namely the 2008 Transfers, should be set aside as constituting unjust enrichment. Compl. ¶¶ 12–13, 39, ECF No. 2-1. In response, Hershkovich argues in his Motion that Plaintiffs' claim must fail because: (i) the 2005 Agreement is a partnership agreement rather than a loan, and therefore usury does not apply; (ii) even if the 2005 Agreement is deemed to be a loan, it is not usurious; (iii) the 2005 Agreement is an enforceable written contract, which precludes the equitable relief sought; and (iv) the Plaintiffs have not produced any evidence of the fair market value of the Transferred Units.

Before addressing each of these arguments, an initial consideration not raised by the parties must be addressed. With two of his arguments, Hershkovich urges the Court to find that the 2005 Agreement is not usurious as a matter of law. However, the Court previously ruled on that very question in dismissing Plaintiffs' malpractice claim against Marans, and did so in a manner favorable to Hershkovich. As noted above, the Court found that the 2005 Agreement was not usurious, and therefore that Marans could not have been negligent in failing to advise his clients to the contrary. Because the usury issue was not only determined but also necessary to the dismissal of the malpractice claim, the law of the case doctrine should prevent its reconsideration here. *See McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013) (noting that, according to the law of the case doctrine, a court will "generally adhere to [its] own earlier decision on a given issue in the same litigation" (quoting *In re Rezulin Liab. Litig.*, 224 F.R.D. 346, 349–50 (S.D.N.Y. 2008))); *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) ("The law of the case prevents the relitigation of an issue once it has been decided

9

. . . . '[e]ither expressly or by necessary implication . . . .'" (quoting *Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005))).

The law of the case doctrine is not absolute, however. The doctrine serves as a limiting principle for Federal Rule of Civil Procedure 54(b), which provides that a decision adjudicating fewer than all claims in an action "may be revised at any time" prior to the entry of a final judgment. Fed. R. Civ. P. 54(b); *see* Fed. R. Bankr. P. 7054 (making Rule 54(b) applicable in adversary proceedings). The application of Rule 54(b) is committed to the Court's discretion, *June v. Thomasson*, Civil Action No. GLR-14-2450, 2017 WL 3642944, at *4 (D. Md. Aug. 24, 2017), and, by the same token, so too is the application of the law of the case doctrine. If good cause for revisiting a prior decision exists, even if it might otherwise be subject to law of the case, a court is not precluded from exercising its authority under Rule 54(b) sua sponte. *See Dunn*, 940 F. Supp. 2d at 99–100; *June*, 2017 WL 3642944, at *4. The parties have not expressly raised Rule 54(b), but because they have presented new arguments on usury that may alter the Court's prior determination, those arguments will be assessed here.

I.   Usury

Only the arguments raised by Plaintiffs require in-depth consideration, as the arguments raised by Hershkovich would, unsurprisingly, not alter the Court's prior determination. If the 2005 Agreement were a partnership agreement, it would not be subject to the law of usury; if it were a loan, the Court's prior determination that usury would be inapplicable under the New York General Obligations Law would stand.[9] However, Plaintiffs have raised here two arguments that would

---

[9] The Court notes, however, that the 2005 Agreement meets all of the elements of a loan. That Hershkovich is referred to as an "Investor" throughout the agreement is immaterial because the agreement is both substantively and stylistically structured as an agreement to loan money. The Hershkovich Loan was repayable absolutely, with the only contingency being the normal risk of default inherent in any loan. *See Clever Ideas, Inc. v. 999 Rest. Corp.*, No. 0602302/06, 2007 N.Y. Misc. LEXIS 9248 (Sup. Ct. N.Y. Cty. Oct. 12, 2007). Further, the 2005 Agreement does not mention any profit sharing or joint control or management of 16th Street. *See generally* 2005 Agmt., ECF Nos. 56-2, 69-1.

directly affect the applicability of that statute to the 2005 Agreement, each of which will be considered in turn.

Plaintiffs' first argument regards § 5-501(6) of the New York General Obligations Law. That provisions reads, in relevant part:

> No law regulating the maximum rate of interest which may be charged, taken or received, including section 190.40 and section 190.42 of the penal law, shall apply to any loan or forbearance in the amount of *two million five hundred thousand dollars or more*. Loans or forbearances *aggregating two million five hundred thousand dollars or more which are to be made or advanced to any one borrower in one or more installments pursuant to a written agreement by one or more lenders shall be deemed to be a single loan* or forbearance for the total amount which the lender or lenders have agreed to advance or make pursuant to such agreement on the terms and conditions provided therein.

N.Y. Gen. Oblig. Law § 5-501(6)(b) (emphasis added). In other words, there is no New York usury law which prohibits, voids, or regulates transactions over $2,500,000, a financial plane above which all players are deemed to be able to fend for themselves. *See In re Venture Mortg. Fund, L.P.*, 282 F.3d 185, 189 (2d Cir. 2002); *see also In re BH Sutton Mezz LLC*, Case No.: 16-10455 (SHL), Adv. Pro. No.: 16-01187 (SHL), 2016 WL 8352445, at *37 (Bankr. S.D.N.Y. Dec. 1, 2016). As the aggregate loan amount here was $4,000,000, well over the $2,500,000 maximum limit for usury regulations to apply, the Court found them to be inapplicable. However, Plaintiffs now argue that the Court should consider the loans individually, rather than in the aggregate, which would place the Hershkovich Loan in the amount of $2,300,000 below the statutory maximum amount for criminal usury.

The case of *In re BH Sutton Mezz LLC* is instructive on this issue. In *Sutton Mezz*, the defendant loaned the plaintiff $1,400,000 at an interest rate in excess of the 25% criminal usury limit imposed by § 190.40 of the New York Penal Law, as part of a $145,850,000 round of funding for a large construction project. *Sutton Mezz LLC*, 2016 WL 8352445, at *35–37. The defendant's

loan, while admitted to be a part of the overall financing package, was the only loan made in a separate written agreement and was separately secured by a lien on the subject building. Citing that (i) the loans were made in separate written agreements; (ii) they were intended to fund separate and distinct items; and (iii) the parties had practical purposes for separating the agreements (to prevent the filing of additional liens against the property), the court in *Sutton Mezz* held that the defendant's building loan should be considered separate from the larger financing package for the purposes of aggregating under § 5-501(6)(b) of the New York General Obligations Law. *Id.* at *36.

There is no similar justification for treating the loans separately here. While the instant loans were made pursuant to separate documents, the remainder of the circumstances indicate that this is the only manner in which they were separate and distinct. Indeed, Paragraph 24 of the 2005 Agreement provides that, "[Hershkovich] acknowledges that his loan is 57.5% of the total loan amount being made by [Hershkovich] and other parties," 2005 Agmt. ¶ 24, ECF Nos. 56-2, 69-1, indicating that the Hershkovich Loan was one part of a larger aggregate loan. Further, the loan agreements are, in essence, identical apart from the lenders' names and amounts loaned, providing additional support for this conclusion. Accordingly, this argument does not alter the Court's initial conclusion that the 2005 Agreement is subject to the exemption provided for under General Obligations Law § 5-501(6)(b).[10]

Plaintiffs' second argument concerns New York's prohibition on corporations asserting usury as an affirmative claim for relief. *See Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 279–80 (S.D.N.Y. 2017) (citing *Scantek Medical Inc. v. Sabella*, 582 F. Supp. 2d

---

[10] Even if the Hershkovich Loan were found to be usurious, courts in the Second Circuit have noted that there is no statutory basis to void loans based on criminal usury. *Venture Mortg.*, 282 F.3d at 189. In *Sutton Mezz*, the court held that the appropriate remedy would be to revise the loan to an appropriate, non-usurious rate. *Sutton Mezz*, 2016 WL 8352445 at *37.

472, 474 (S.D.N.Y. 2008)). They assert that the prohibition is inapplicable because the Hershkovich loan was a personal, rather than a corporate, loan. The language of the 2005 Agreement provides that the subject loan was made by and between Hershkovich and the corporate entity, 16th Street, with the individuals, in their capacity as Members, receiving the funds and providing a guaranty of payment. *See generally* 2005 Agmt., ECF Nos. 56-2, 69-1. Contrary to Plaintiffs' assertion, this makes evident to the Court that we are dealing here with a corporate loan, and Plaintiffs have offered no evidence to support a contrary notion.[11] Moreover, because the corporate entity is barred from asserting usury, "so [are] its individual guarantor[s]." *Colonial Funding*, 252 F. Supp. 3d at 279–80. Plaintiffs are therefore barred from affirmatively asserting usury as a basis for the relief they seek.

II.     Preclusion Based Upon the 2005 Agreement

Hershkovich argues that the unjust enrichment claim is barred at the outset because the 2005 Agreement is a valid and enforceable contract, which precludes recovery in quasi-contract. The Court disagrees. It is undisputed that 16th Street did not grant Hershkovich or any other party a separate mortgage on the Property in connection with the 2005 Agreement. In fact, the 2005 Agreement, by its terms, acknowledges the existence of a sole mortgage encumbering the Property, which was held by China Trust Bank at the time of the agreement. *See* 2005 Agmt., ECF Nos. 56-2, 69-1; Def.'s Dep., June 29, 2015, 50:9–10, ECF Nos. 56-8, 61-1. Also absent from the terms of the 2005 Agreement itself is any language that provides for the transfer of any of the Units to the Defendant as a means of satisfying the underlying debt obligation, or as a remedy for default

---

[11] Mutzen has alleged that the proceeds of the loan were for "the partners of the Plaintiff [sic] and their personal use," and further that "Herskovich [sic] was well aware that the purpose of the loan was for an investment by me and my partners in a property on Myrtle Avenue in Brooklyn[,] New York." Mutzen Aff. Opp'n ¶ 6, ECF No. 60. The record offers no support for these assertions, however, and "[s]elf-serving affidavits and statements, standing alone, are insufficient to defeat summary judgment." *In re Xiang Yong Gao*, 559 B.R. 319, 323 (Bankr. E.D.N.Y. 2016) (citing *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)).

under said agreement. 2005 Agmt., ECF Nos. 56-2, 69-1.  More importantly, the record is devoid of any subsequent written agreement entered into by the parties that contemplates the transfer of any of the Units in satisfaction of the underlying debt owed to Defendant.  Taken together, these facts counsel against accepting Hershkovich's conclusion.

While it has generally been held that a valid and enforceable contract precludes quasi-contract remedies for events arising out of a subject matter covered by that contract's terms, that is not so where the dispute concerns a subject that is not covered. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *IIG Capital LLC v. Archipelago, L.L.C.*, 829 N.Y.S.2d 10, 13–14 (App. Div. 1st Dep't 2007).  In the latter situation, a "plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies." *IIG Capital*, 829 N.Y.S.2d at 13–14 (denying dismissal of quasi-contract claims despite valid and enforceable contract where there was ambiguity regarding whether that agreement covered the dispute at issue); *see also Am. Tel. & Util. Consultants, Inc. v. Beth Israel Med. Ctr.*, 763 N.Y.S.2d 466, 466 (App. Div. 1st Dep't 2003) ("Here, in view of the bona fide dispute over whether, as plaintiff contends and defendant denies, the [subject] programs are within the scope of the parties' contracts, dismissal of plaintiff's unjust enrichment claim with respect to those programs was premature.").  In other words, "where the contract does not cover the dispute in issue . . . a plaintiff [may] proceed upon a quasi-contract theory of unjust enrichment." *Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 948 N.Y.S.2d 292, 299 (App. Div. 1st Dep't 2012) (citing *IIG Capital*, 829 N.Y.S.2d at 13–14).

The issue, then, is whether the 2008 Transfers fall within the scope of the 2005 Agreement. "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties under the guise of interpreting the writing.'" *Reiss v.*

14

*Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001) (quoting *Schmidt v. Magnetic Head Corp.*, 468 N.Y.S.2d 649, 654 (App. Div. 2d Dep't 1983)). If these commercially sophisticated and counseled parties had intended to secure the Hershkovich Loan by collateralizing any of the Units, they could have easily expressed the same in the 2005 Agreement, but they did not. By its plain terms, the 2005 Agreement does not provide for the transfer of any of the Units to the Defendant or any other party, and as such, the Court finds that the 2008 Transfers fall outside the scope of the 2005 Agreement. *See, e.g.*, *Ashwood Capital*, 948 N.Y.S.2d at 299 (holding that because the transactions in question fell outside the scope of the subject contract, the contract did not bar the unjust enrichment claim). Therefore, the existence of the 2005 Agreement in and of itself does not bar Plaintiffs' unjust enrichment claim.

### III. Evidence of the Value of the Transferred Units

Hershkovich submits that the only issue remaining is whether the fair market value of the Transferred Units exceeds the amount to which he was entitled. *See, e.g.*, Def.'s Reply 7, ECF No. 63. He points out that Plaintiffs have ascribed a value of over $7,000,000 to the Transferred Units, but failed to produce any documentation to support that valuation. Hershkovich served a document demand on June 30, 2015 containing 18 requests seeking, *inter alia*, documents relating to the fair market value of the Transferred Units, to which Plaintiffs served a written response stating:

> Debtor objects to the request as being overbroad and burdensome. No such documents are in Debtor's possession, custody or control. All documents relating to the transaction were in the possession of Defendant, Marans Weiss, and Mordechai Hirsch and Joseph Gruber. The Debtor will serve appropriate demand on such parties to produce said documents.

Pls.' Resp. to Doc. Produc. 2–6, ECF No. 56-5. On November 2, 2015, Plaintiffs served their document production. Def.'s Decl. ¶ 15, ECF No. 56-1. Hershkovich claims that it included nothing evidencing the fair market or appraised value of the Transferred Units. *Id.*; *see* Real Prop.

15

Transfer Rep., ECF No. 56-3. Moreover, he contends that because the deadline for discovery set by the so-ordered stipulation has passed, Plaintiffs are now precluded from introducing any evidence of the value of the Transferred Units, and therefore cannot prevail at trial. *See* Stip. and Order, ECF No. 34. Ultimately, then, he argues that, absent any new evidence of the value of the Transferred Units, summary judgment is appropriate.

Hershkovich is correct to point out that Plaintiffs' evidence of value is sparse, but he has provided little to show that this precludes the Court from finding an issue of fact with respect to valuation. Hershkovich submits that the reason he accepted the Transferred Units in satisfaction of the debt due under the 2005 Agreement was "because Plaintiffs were unable to otherwise sell the units at that time and we believed by taking the units we could at least market and sell them and recover some of the unpaid principal loaned." Def.'s Suppl. Decl. ¶ 12, ECF No. 69. However, by his deposition testimony, Hershkovich has demonstrated that exactly how much could be recovered is an open question. He expressed that he did not know the value of the Transferred Units at the time he received them:

> Q: When you got paid back the ten apartments, your testimony was as far as you can recall, that was in complete, full and final satisfaction of any obligations under the loan. How much money did the ten apartments – how much money were they supposed to equal? How much money were you owed under the loan in total?
> A: I don't remember.
> Q: Was it $7 million?
> A: I don't remember the amount.
> **Q: Do you know what the value of the ten apartments was when you got them?**
> **A: No.**
> Q: Who arranged for you to get the ten apartments as repayment for the loan?
> A: As far as I can recall, I arranged it.

Def.'s Dep. 48:8–23, ECF Nos. 56-8, 61-1. He also did not use any kind of appraisal or valuation methodology to arrive at the valuation of the Transferred Units:

16

> Q: When you received the ten units, how did you arrive at ten units being a satisfaction of the loan agreement? What was the calculation that you used to take 10 units? Why wasn't it 5 or 15 units?
> A: I don't remember.
> **Q: Did you engage in any kind of appraisal of the units at the time to figure out how much they were worth?**
> **A: No.**
> …
> Q: How did you arrive at a valuation that these ten units satisfied your loan agreement?
> A: I don't remember.
> **Q: Did you use any kind of appraisal or valuation methodology?**
> **A: We did not.**

*Id.* at 99:5–14, 101:10–16.

Hershkovich further testified that the Transferred Units were virtually worthless because the distressed housing market in 2008 rendered them unsalable:

> Q: So is it possible that you were overpaid by taking these ten units and that they were in fact worth far more than the loan?
> A: I don't think so.
> Q: How do you know that?
> **A: As far as I can recall, they really had almost no value at that point because nobody was buying any units at that point. It was in the depths of the financial collapse.**
> …
> Q: [Y]ou had a substantial loan in excess of $4 million with somewhere between 1 and $3 million in interest, and you're saying you took 10 units that were effectively worthless because there is no market; is that your testimony?
> **A: At the time, they were un-sellable.**
> **Q: How do you know that?**
> **A: That was my opinion.**

*Id.* at 101:22–25, 102:9–18. Plaintiffs therefore argue that Hershkovich had no reason to take the Transferred Units in satisfaction of the outstanding debt if they were worthless, and that the only credible evidence of value is Mutzen's declaration that the value of the Transferred Units was

17

approximately $9,000,000.[12] Mutzen Aff. Opp'n ¶ 7, ECF No. 60; Pls.' LBR 7056-1 Stmt. ¶¶ 5–6, ECF No. 61. In response, Hershkovich stated that,

> I simply meant that the market conditions were so unfavorable that selling the units was likely to take a long time and would be very difficult, because banks were not extending mortgage loans except to extremely credit worthy individuals. I obviously did not mean that an appraisal of the fair market value of the units would have resulted in a determination that they were worth zero dollars.

Def.'s Suppl. Decl. ¶ 15, ECF No. 69. And he continued: "I did however accept the transfer of the 10 units as satisfaction of the debt as evidenced by the outstanding loan amount of approximately $7 million, which I clearly would not have done had I believed the units were worth nothing." *Id.* ¶ 16.

The dispute outlined above and the record of this case indicate that an issue of fact exists as to the value of the Transferred Units. That Plaintiffs are precluded from introducing any documentary evidence not previously produced by the stipulated deadline does not alter this conclusion, regardless of whether they may ultimately prevail on their claim with the documentation and testimony available to them at trial.

Moreover, whether Defendant was unjustly enriched by receiving the Transferred Units does not—as Hershkovich contends—turn solely on the issue of valuation, but instead on a host of issues, many of which constitute genuine issues of material fact for trial. Under New York law, "whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction, and, instead, there must be a realistic determination based on a broad view of the human setting involved." *Moyer Grp.*, 586 B.R. at 408 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 132 (Bankr. S.D.N.Y. 2011)). As no agreement provided covers the dispute

---

[12] Mutzen stated that: "The entire transaction was extremely shady as the units were worth far more than even the seven million dollars purportedly owed. It is my opinion as owner and based on my knowledge of the project and other sales that the units were worth at least 9 million dollars." Mutzen Aff. Opp'n ¶ 7, ECF No. 60.

18

at issue herein, there exists a threshold factual issue as to whether the 2008 Transfers were contemplated by the parties as a means of satisfying the debt.  In turn, if the transfers were not contemplated, their propriety and effect on the indebtedness created by the 2005 Agreement must be addressed, along with whether, based on the value of the Transferred Units and the manner in which they were liquidated, Hershkovich was in fact enriched at the Plaintiffs' expense.  Alternatively, if the 2008 Transfers were contemplated, then the latter question of enrichment, as informed by valuation and the manner of liquidation, would still remain.  However, as determined above and in the Court's earlier decision, in either case Plaintiffs may not ground their unjust enrichment claim under a theory of usury.

## CONCLUSION

For the foregoing reasons, and upon consideration of the entire record of this case, the Court hereby finds that the Defendant failed to meet his burden to establish that no genuine dispute exists as to any material fact herein.

Accordingly, the Defendant's Motion for summary judgment is hereby denied.

The parties shall appear at a pretrial conference before the Court on October 11, 2018 at 11:00 a.m. in order to set a trial date in connection with the Plaintiffs' unjust enrichment claim in the above-captioned adversary proceeding.

**IT IS SO ORDERED.**

Dated: September 4, 2018
Brooklyn, New York

_____
Nancy Hershey Lord
United States Bankruptcy Judge